## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### Case No.:

BOBBY SULLIVAN,
CAROLE BARKER, JEANNE BELLUCI
W. BONITA TILLERY-BUTLER, JANICE
DOCKING, RICHARD IENNA, NANCY
IENNA, ELIZABETH KOVACS, DAVID
LUTZ, GEORGE MCLEOD, DORIS
MERICKEL, KATHIE MICKO, BEVERLY
SPANGLER, LUCINDA SPAULDING,
ANDREW D. ST. JOHN, DONNA
WHITLEY, THOMAS DUNCAN, LESLIE
HOGLE, DAVID OWENS, THOMAS
CHASE.

     Plaintiffs,

                            CLASS ACTION
v.                         REPRESENTATION

CITY OF SARASOTA, a municipal corporation,

     Defendant

---

## COMPLAINT

---

### INTRODUCTION

    1.      Since 1960, the City of Sarasota has provided free lifetime health insurance to its retirees.  In 1993, it decided to change this, but it knew, as it now knows or should know, that these benefits had vested and that current employees who had operated under this expected benefit would have relied on the promise and be left high-and-dry.

    2.      Said simply, the City knew it was wrong to just stop providing benefits that it had provided and promised for years.  So the City declared that all those who had been hired before October 1, 1993 and retired under a City plan would continue to enjoy

lifetime health benefits.[1]  This was memorized by resolution, meeting notes, oral promises and other documents.

3.      The City did not provide contributions to their employees' social security and Medicare benefits and continued providing benefits in this fashion for another eight years.[2]  Then in January of 2011 the City decided it would end all lifetime free health benefits regardless of whether the individual started working prior to October 1, 1993, the vested nature of these benefits, and their explicit promises and intent to bind themselves to these promises.

4.      As a consequence the City has breached its agreements and fiduciary duties to its current and former employees, violated their due process rights, abandoned those that gave up their social security and Medicare benefits in exchange for the City's promise, wrongfully denied vested benefits, breached the implied covenant of good faith and fair dealing, and destroyed the trust it once enjoyed with its former and current Pre-October 1st 1993 Employees.

5.      The City has left an estimated 742 individuals without affordable health or dental care, of which 20 bring this action for damages.  Accordingly, Plaintiffs sue the City seeking to enjoin it from denying their promised medical benefits and/or paying damages that will allow the parties to secure health insurance privately for the rest of their life equal to or greater in value than those they would have enjoyed under the City's plan.

6.      The damages are estimated in excess of $100 million dollars.

---

[1] Herein "Pre-October 1st Employee(s)" shall mean an employee of the City of Sarasota that was hired on or before September 30, 1993, that qualified for retirement under one of the City's retirement plans.
[2] The City had a choice of either provide pension and future health benefits or contribute 7.65% (of which 6.2% would go to Social Security and 1.45% to Medicare).  The City chose not to contribute.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

## PARTIES

7.     Defendant, the City of Sarasota (herein the "City") is a municipality organized under the laws of Florida. The City is a "person" within the meaning of 42 U.S.C. § 1983.

8.     Plaintiff, Bobby Sullivan, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.The City hired him before October 1, 1993. He has more than ten years of service to the City.

9.     Plaintiff, Carole Barker, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 17 years. The City hired her before October 1, 1993. During that time Carole Barker reached the position of Coordinator Utility Billing.

10.     Plaintiff, Jeanne Bellucci, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint. She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 21 years. The City hired her before October 1, 1993. During that time Jeanne Bellucci reached the position of Senior Planning Technician.

11.     Plaintiff, W. Bonita Tillery-Butler, is an individual residing in Sarasota. She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 16 years. The City hired her before October 1, 1993. During that time W. Bonita Tillery-Butler reached the position of Operations Specialist.

12.     Plaintiff, Janice Docking, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 12 years. The City hired her before October 1, 1993. During that time Janice Docking reached the position of Executive Assistant to Human Resources Director.

13.     Plaintiff, Richard Ienna, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years; approximately 17 years. The City hired him before October 1, 1993. During that time Richard Ienna reached the position of Deputy Director Building, Housing, Zoning.

14.     Plaintiff, Nancy Ienna, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years. The City hired her before October 1, 1993.

15.     Plaintiff, Elizabeth Kovacs, is an individual residing in Terra Bella, CA. She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 17 years. The City hired her before October 1, 1993. During that time Elizabeth Kovacs reached the position of Engineering Technician.

16.     Plaintiff, David Lutz, is an individual residing in Sarasota. He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years. The City hired him before October 1, 1993. During that time David Lutz reached the position of Supervisor.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

17.     Plaintiff, George McLeod, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years; approximately 16 years. The City hired him before October 1, 1993. During that time George McLeod reached the position of Facility Technician.

18.     Plaintiff, Doris Merickel is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years. The City hired her before October 1, 1993. During that time Doris Merickel reached the position of Senior Clerk.

19.     Plaintiff, Kathie Micko, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 14 years. The City hired her before October 1, 1993. During that time Kathie Micko reached the position of Administrative Assistant.

20.     Plaintiff, Beverly Spangler, is an individual residing in Pinellas Park, FL. She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 24 years. The City hired her before October 1, 1993. During that time Beverly Spangler reached the position of Code Compliance, Local Business Official.

21.     Plaintiff, Lucinda Spaulding, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years. The City hired her before October 1, 1993.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

22.     Plaintiff,  Andrew D. St. John, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years; approximately 31 years. The City hired him before October 1, 1993. During that time Andrew D. St. John reached the position of Foreman Crew III.

23.     Plaintiff,  Donna Whitney, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 15 years. The City hired her before October 1, 1993. During that time Donna Whitney reached the position of Occupational License Technician.

24.     Plaintiff, Thomas Duncan, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years; approximately 30 years. The City hired him before October 1, 1993. During that time Thomas Duncan reached the position of Captain-Police.

25.     Plaintiff, Leslie Hogle, is an individual residing in Sarasota.  She has resided in Sarasota for all relevant times discussed in this Complaint.  She is a retired employee for the City of Sarasota. She was employed by the City for more than 10 years; approximately 28 years. The City hired her before October 1, 1993. During that time Leslie Hogle reached the position of Captain of Sarasota Police Department.

26.     Plaintiff, David Owens, is an individual residing in Deland, FL.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years;

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

approximately 28 years. The City hired him before October 1, 1993. During that time David Owens reached the position of Sergeant.

27.     Plaintiff, Thomas Chase, is an individual residing in Sarasota.  He has resided in Sarasota for all relevant times discussed in this Complaint.  He is a retired employee for the City of Sarasota. He was employed by the City for more than 10 years; approximately 25 years. The City hired him before October 1, 1993. During that time Thomas Chase reached the position of District Fire Chief.

28.     The Class is a group of individuals who were hired before October 1, 1993 and have ten or more years of service to the City of Sarasota.

## JURISDICTION

29.     Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3), and 42 U.S.C. § 1988 and 1983, because this involves a federal question arising from the Federal Constitution and because this is an action to recover damages for injury to Plaintiffs' person and property.  This Court has supplemental jurisdiction over Plaintiffs' state claim pursuant to 28 U.S.C. § 1367 because the state law claims arise from the same set of operative facts.

30.     This Court has personal jurisdiction over the Defendant because it is a municipal corporation operating in and under the laws of Florida.

31.     Venue is proper in this caseunder 28 U.S.C. §1391 (b) because the harm to the Plaintiffs occurred in this District.

### Examples of Representations
### Concerning Lifetime Health Insurance Benefits

32.     The City has a long history of proving lifetime health insurance benefits at no cost, which began in 1960.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

33.   This practice was captured in the September 20, 1993 meeting minutes:

> "Mayor Pillot stated ... the City ... offers free lifetime health insurance for retirees."[3]

34.   It was also captured by the City's Risk Manger to the City Commission, noting the City's:

> "practice of paid lifetime medical/dental benefits coverage upon an employee's qualified retirement from service with the City of Sarasota." [4]

35.   It was also captured in the July 18, 1995 minutes.

36.   It was also reiterated by then Vice Mayor Quillin who indicated:

> the City does not like broken promises; **that the City made a promise** to employee hired before October 1, 1993, to provide free participation in the healthcare plan during retirement; that the City should keep its promises . . . that free participation in the healthcare plan is an important part of the retirement benefits promised to employees."[5]

37.   It was also captured on December 3, 2001 where the City and plan participants discussed the promises made by the City.[6]

38.   It was also captured in the April 30, 2009 article entitled "City mulls furlough, layoff" written by Robin Roy, City Editor, where Roy explains:

> "Before 1993, the **city promised** employees free medical coverage and discounted coverage for their dependents even after employees retired." (emphasis added).

39.   It was even captured in the Retiree Insurance Renewal  forms where it would clearly say:

---

[3]Sept. 20, 1993 Meeting Minutes.
[4]September 7, 1993 Memo to City Commission from Robert J. Ellis.
[5] See Book 50 Page 22346, 12/17/01 (emphasis added).
[6] As one commentary noted, "despite the financial difficulties, the City continued to promise healthcare benefits would be provided free of charge to each retired employee hired before October 1, 1993; that proving healthcare benefits to retired employees is a recognized past policy of the City as established in Resolution No. 93R-683." Book 50 Page 22169 12/03/01 6:00 P.M.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

"Retiree Only:        **No Cost** (Pre-1993)"[7]

40.    It was also captured in the City's Retiree Cafeteria Plan Enrollment Form's where it against noted:

"**No Charge**" for a Retiree enrolling in a medical plan.

41.    To put it simply, it was widely known and published on multiple occasions (including recruitment posters) that the City, at least at one time, provided and promised its employees free lifetime health insurance benefits.

42.    The City conveyed its intent to bind itself to the promises described in paragraphs 32-39 in writing, orally, by implication, and through practice.

**The City Decides to Change the Plan for Current and Future Retirees, Recognized its Moral And Legal Duties, and Made Clear This Change Would Not affect Pre-October 1st Hires**

43.    In the end of September 1993, as the City recognized it needed to better manage the costs in order to plan and provide for the benefits that it has promised.

44.    After discussion and consideration it decided to stop the free lifetime medical benefits for those hired *after* October 1, 1993.

45.    However, the Defendant knew it could not just take away these benefits because they had vested, they did not want to breach their fiduciary duties and agreements, and because it was the right thing to do. As Mayor Pillot explained:

**The City has a _moral_ obligation to retain those benefits** . . . that when interviewed . . . a prospective employee has an idea of salary . . . but also benefits, including retirement benefits. (emphasis added).

---

[7] See for example, the 01/01/2006 EPOS (Exclusive Provider Organization) forms distributed by the Defendant.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

46.     Acting responsibly, the City set up an irrevocable trust fund to hold accumulated assets and disburse payment for post-employment retiree health and life insurance benefits.

47.     This trust fund was created through Ordinance No. 06-46499.

48.     In fact, "the City established an Other Post Employee Benefits Trust Fund as *recommended* by the actuary hired to determine the other post employee benefit (OPEB) liability; [of which] . . . the largest of the post-employment benefits is medical and dental insurance."[8]

49.     Led by the Mayor Pillot, he discussed his intent about benefits remaining for those hired before Oct 1, 1993 and the proposal which was accepted unanimously by the City commissioners explaining:

> "all employees who are employees of the City on or before September 30, 1993, including anyone who left in good standing and who may be rehired in good standing **would** **continue to have this benefit**."[9]

50.     The proposal was Resolution 93R-674, and explained that lifetime medical benefits would cease for new hires, but continue on for current employees, stating in relevant part that:

> "All current  ... employees ... who are hired on or before September 30, 1993, **shall continue** to be eligible to participate ... throughout their employment ... and throughout their retirement, provided they qualify for retirement under one of the City retirement plans."[10]

51.     The City of Sarasota explicitly promised pre-Oct 1, 1993 employees free lifetime health and dental so long as they qualified for retirement under one of the City's retirement plans.  The City had the intent to bind itself to offer free *lifetime* health

---

[8] Page I-20
[9] Oct 4, 1993 Meeting Notes (emphasis added).
[10] Resolution 93-674(emphasis added).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

benefits to those within the Class through these promises, and did not provide itself with any discretion to take away these free lifetime health benefits to the Class.

52.    The City conveyed its intent to bind itself to the promises described in paragraphs 32-39, 44, 48, 49 in multiple ways, including in 1993 through adoption of Resolution 93R-674, but also orally, and through its recruitment efforts.

53.    The end result is that the benefits for Pre-October 1st Employees are vested. They may not be altered or changed. They are also part of the retirement plan.

54.    Indeed the history, policy, promises and representations to City employees created more than a mere expectation based on anticipation of continuation of these benefits.  The history, policy, promises and representations created a scheme and therefore an employee benefit plan.

55.    City Ordinance 24-117.1 actually provides for and recognizes vesting "all benefits upon attainment of the plan's . . . requirements."

56.    Plaintiffs satisfy the Plan's requirements of 10 years of service and hire date of before October 1, 1993.

57.    As illustrated by paragraphs 32-39, 44, 48, 49, 55, among others, the mutual intent of both Plaintiffs' and City was that the City would provide lifetime health benefits at no cost for those with 10 years of service and a hire date before October 1, 1993.  The mutual intent of Plaintiffs and the City was that the City did not have discretion to revoke their vested free lifetime health benefits.

58.    The City's promise, as described in paragraphs 32-39, 44, 48, 49, 55, among others, to pay 100% of the costs of health benefits for Plaintiff and the Class, created one or more legally binding contracts.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

### *Implied contracts can vest health insurance rights*

59.     In November of 2011, the California Supreme Court in *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal. 4th 1171 (Cal. 2011) at the request of the Ninth Circuit Court of Appeals addressed the following abstract question: "Whether as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees."

60.     The California Supreme court concluded "yes."  The Court explained that vested rights may come from a city ordinance or resolution, but they can also be *implied* by the circumstances accompanying the passage of an ordinance or as a matter of the parties' intent.   This is no different here.

61.     Plaintiffs here were induced to stay and continue their employment based on these benefits both from the resolution, oral and written promises, and implied circumstances.  Any one of which (*that is* the oral promises, written promises, and implied circumstances) by themselves create a vested right to free lifetime health and dental insurance benefits.

62.     Further, in Florida, it is well established that a public employee's rights to benefits cannot be reduced once the public employee becomes *eligible* for retirement.[11]

63.     This holding is even shared by Mark Singer, the City's Attorney, who noted in 1995 that his "interpretation is that [the] Commission cannot change the accrued benefits"[12]

---

[11]*See, e.g.,State ex. Rel Stringer v. Lee*, 2 So. 3d 127, 132-33 (Fla. 1941).*See alsoAllied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co*., 404 U.S. 157, 182 n. 20 (U.S. 1971) ("Under established contract principles, vested retirement rights may *not be altered* without the pensioner's consent") (emphasis added).
[12]October 2, 1995 at 10:00 a.m. Meeting Minutes of the Sarasota City Commission.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

64.     In fact, such a right and interest is subject to due process protections under the Fourteenth Amendment as well.[13]

65.     It is also well established that an employee is not required to retire in order to protect these types of rights.[14]

66.     The Class members are confused, angry and upset that the City would ignore its legal and moral obligations to provide that which it promised.

67.     There is no excuse for their actions and as a result they have been severely damaged.

68.     The City had honored its promises to employees with ten plus years of service (who had been hired before October 1, 1993), providing medical insurance benefits without cost until January 2011.

69.     However, these benefits ended in January of 2011 with the City demanding that the individuals receiving said benefits pay for health and dental insurance.

70.     The City also implemented a payment collection deduction system.

71.     In reliance on the City's promises and representations, Plaintiffs made numerous life decisions regarding, among other things, whether and for how long to work for the City, how much to save for retirement, and whether to select the City's health care for themselves and their families over other health care options formerly available through their spouse's or other dependent's employer.  Many such Class members chose to continue working for the City rather than moving to other, higher

---

[13]*State Board of Medical Examiners v. Rogers*, 387 So.2d 937, 939 (Fla. 1980) (emphasis added).
[14]*See, e.g.,Lee*, 2 So.3d at 132-33; *O'Connell v. State of Florida, Dept. of Admin., Div. of Retirement*, 557 So.2d 609 (Fla. 3d DCA 1990).*See alsoCity of Fort Lauderdale v. City of Fort Lauderdale Police and Firefighter Retirement System*, Case No. CACE 04-3578 (Fla. 17th Cir. Ct. 2007) *per curiamaff'd* 983 So. 2d 592 (Fla. 4th DCA 2008)(active employees who were eligible for retirement on the date a municipality repealed certain benefits not bound by the repeal).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

paying employment, at least in part because of the promise of free lifetime health insurance.

72.     Plaintiffs have fully performed their duties under their contracts with the City and are entitled to their vested benefits and the benefits of their bargains.

## CLASS ACTION REPRESENTATIONS

73.     This case is well suited for Class Action representation.

74.     Plaintiff brings this action on his own behalf, and on behalf of a class of persons under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

75.     The named Plaintiff seeks to represent a class of:

> All current and former employees of the City of Sarasota who were hired before October 1, 1993 and who have at least ten years of service and who are not receiving free lifetime medical insurance.

76.     Plaintiffs reserve the right to amend the definition of the Class following discovery.[15]

77.     The Class is so numerous that joinder of all members is impractical, as Plaintiff's research indicates there are in excess of 700 individuals that fit the aforementioned class description.

78.     There are questions of law and fact common to the Class that predominate over any questions affecting only individuals, including, but not limited to:

    a.  Whether the City promised the Class it would provide them with free lifetime medical insurance benefits.

    b.  Whether the City breached its promise to the Class that it would provide them with free lifetime medical insurance benefits.

---

[15] Indeed, the Plaintiffs can restrict class membership to those not members of other such actions seeking similar damages from the City's 2011 actions.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

    c.   Whether the free lifetime medical benefits were or became through implied circumstances a vested benefit

    d.   Whether the City's sudden denial of those benefits without notice or an opportunity to be heard violates the Plaintiffs' procedural due process rights to a government earned property interest.

    e.   Whether the City breached its fiduciary duties to the Plaintiffs by misrepresenting the benefits a City employee would be entitled to by working and becoming a City employee.

79.  The named Plaintiffs are members of the Class and their claims are typical of the Class claims. Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

80. Indeed the named Plaintiffs have more than 10 years of service of employment to the City of Sarasota.

81.  The named Plaintiffs were also hired before October 1, 1993.  In other words, the named Plaintiffs met the requirements to receive these free lifetime medical benefits.

82. The named Plaintiffs are no longer receiving lifetime free medical insurance benefits the City once provided for them.

83. The named Plaintiffs will fairly and adequately protect the interest of the Class members.

84. The named Plaintiffs have no interests that are adverse to other members of the Class.

85. The named Plaintiffs have retained counsel who is experienced in the prosecution of class action litigation and who has experience with benefit law having participated in

the prosecution of class actions that have netted approximately $100 million dollars in recovery to past classes.

86. The City has has acted, and refused to act, on grounds generally applicable to the Class, thereby making class action treatment particularly appropriate.

87. Class certification is appropriate under Rule 23(b)(3).

88. The common issues of law and fact presented in this Complaint predominate over any individual issues.

89. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.

90. A class action is also superior because the expense and burden of individual litigation makes it impractical for the members of the Class to pursue individual litigation to vindicate their rights.  Indeed, the Class is predominately made up of modest income or fixed income-earning individuals.  These individuals, at least for ten years, worked in public service and thus were not paid millions or even hundreds of thousands of dollars per year.  They did not have the same earning capacity as those in the private sector, thereby making litigation and its high costs nearly impossible but for a class action.

91. Class Certification is also appropriate under Rule 23(b)(2) because the Defendant has acted or refused to act on grounds generally applicable to the Class, as described below, making final injunctive or declaratory relief appropriate.

92. The named Plaintiffs are not aware of any problems that would militate against maintenance of this action as a class action.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

## COUNT 1
## BREACH OF FIDUCIARY DUTY

93. Plaintiffs restates and reincorporates as if fully set forth here paragraphs 1 to 92.

94. Plaintiffs placed a justifiable faith and trust in Defendant pertaining to their promised benefits, a faith and trust that Defendant accepted through its and its agents' actions and statements. Defendant breached this justifiably placed faith and trust by revoking Plaintiffs' vested free lifetime health benefits and charging them for their lifetime medical benefits.

95. Defendant owed a fiduciary duty to Plaintiffs.[16]  It is equivalent to the director and officers of a corporation.

96. Indeed, Defendant occupied a position of peculiar confidence towards Plaintiffs and the Class when it comes to employee benefits and representations concerning the same.

97. This position arises because Defendant are in a superior place when it comes to influence, control and responsibility over the employee benefits discussed in this Complaint.   The many explicit promises and representations made by Defendant to Plaintiffs establish a relationship of confidence between the Parties sufficient to establish the imposition of fiduciary duties.

98. Additionally, Defendant have a duty when speaking to be truthful about employee benefits.

99. Defendant also had fiduciary duty of good faith and fair dealing.

---

[16] See *Jacobs v. Vaillancourt*, 634 So.2d 667, 670 (Fla. 2d DCA 1994), rev. denied, 643 So.2d 746 (Fla. 1994) ("The term fiduciary or confidential relationship is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused—in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trust in and relies upon another.").

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

100.     Defendant promised Plaintiffs free lifetime health and dental insurance benefits to those hired before October 1, 1993 and with ten years of service. Defendant breached this promise by taking away this benefit away, effective January 2011, and otherwise not intending to keep it or deviate from it.

101.     If Defendant claims that it did not promise free lifetime health and dental coverage for its Pre-October 1st Employees, then it breached its fiduciary duty by repeatedly providing misleading information that it reasonably could have expected the Plaintiffs to detrimentally rely on and believe they would receive freelifetime health and dental coverage.

102.     Defendant used their influence and abused the trust they acquired.

103.     Defendant's actions are the actual and proximate cause of the Plaintiffs' damages.

## COUNT 2
## PROMISSORY ESTOPPEL

104.     Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92 and further  alleges:

105.     Florida recognizes that a plaintiff may bring a claim pursuant to the theory of "promissory estoppel," even against a municipality because "local government entities must deal fairly with their citizens."[17]

106.     As discussed in detail above, the Defendant expressly promised Plaintiffs that so long as they were hired before October 1, 1993 and they had ten years of service to the City, they would receive free lifetime health and dental insurance coverage. These

---

[17]*See Palazzo Las Olas Group, LLC v. City of Fort Lauderdale*, 966 So.2d 497, 501 (Fla. 4th DCA 2007).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

free lifetime health benefits were an integral part of the promises of total compensation made by the City to Plaintiffs.

107.     Plaintiffs reasonably and detrimentally relied on saidpromise made by the Defendant, at minimum, in that:

    **a.** They were induced to accept employment with the City;

    **b.** They were induced to remain employed with the City;

    **c.** They were induced to continue receiving the free lifetime health benefits, rather than those available to them through other means.

108.     The Defendant reasonably should have expected said promises to induce reasonable reliance in the form of action or forbearance on the part of the Plaintiffs or a third person.

109.     Exceptional circumstances are present because the Defendant's continued promises, representations, and actions constitution affect an extraordinary aspect of Plaintiffs' lives, namely, the ability to receive free lifetime healthcare benefits.[18]

110.     Injustice can be avoided only by enforcement of the promise against the defendant.

111.     Accordingly, as a result of Defendant's actions, Plaintiffs have been, and will increasingly continue to be damaged.

## COUNT 3
## ACTION FOR A DECLARATORY JUDGMENT

112.     Plaintiffs restates and reincorporate as if fully set forth here paragraphs 1 to 92 and further alleges:

---

[18]*See Knudson v. Ellensburg*, 832 F.2d 1142,  (9th Cir. 1987) (stating that "[g]iven the cost of medical treatment in an interruption in medical benefits is a potential ***personal calamity***") (emphasis added).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

113.      This count is for declaratory judgment pursuant to 28 U.S.C. §

2201 and 28 U.S.C. § 2202.

114.      Parties seek to clarify their respective rights under the City's promises and

agreements to provide free lifetime medical/dental insurance benefits as outlined in

detail above.  This is an actual live controversy because Defendant presently does not

provide the promised free lifetime health benefits and the damage to Plaintiff and the

Class is still ongoing.

115.      It is necessary to secure a judicial declaration of rights, status and other

equitable remedies as may be available in order to clarify and/or settle the legal

relationships at issue and whether declaration will terminate and/or afford relief from

uncertainty giving rise to this proceeding.[19]

## COUNT 4
## BREACH OF CONTRACT

116.      Plaintiffs restates and reincorporate as if fully set forth here paragraphs 1

to 92 and further alleges:

117.      As discussed in detail above, the Plaintiffs entered into an agreement, in

relevant part, that if they worked for the City for 10 or more years and had a hire date

before October 1, 1993 that the City would pay their health and dental insurance for life.

No where did the terms of the Parties' agreement did Defendant maintain the ability or

discretion to unilaterally revoke the Class' vested free lifetime insurance benefits.

---

[19] Although Plaintiff puts forth various claims for relief, this Court still has the discretion to determine
whether a declaratory judgment is appropriate.  *See* Davis v. Romney, 490 F.2d 1360, 1370, 1974 U.S.
App. LEXIS 10575, 18 Fed. R. Serv. 2d (Callaghan) 70 (3d Cir. Pa. 1974) ("Declaratory judgments,
however, are available where appropriate even though other remedies are also available.").

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

118.    This agreement constituted a contract, which terms were evidenced by the aforementioned items.[20] The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for the performance of their services as employees of the City.  Plaintiffs have performed their duties under their contracts with the City.

119.    Defendant is legally bound to continue their system of providing free lifetime health benefits to Plaintiff and the Class.

120.    The Defendant materially breached this agreement and contract in January 2011 when they stopped paying the insurance costs for the Plaintiffs.

121.    Plaintiffs will increasingly continue to be damaged by Defendant's breach. The Defendant's material breach was and is the actual and proximate cause of Plaintiffs' and the Class' damages.

## COUNT 5
## BREACH OF IMPLIED IN-FACT CONTRACT

122.    Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92  and further alleges:

123.    A contract implied in-fact is one form of an enforceable contract.  It is based on a tacit promise which can be inferred in whole or in part from the parties' actions.  *See Waite Dev., Inc., v. City of Milton*, 866 So.2d 153 (Fla. 1st DCA 2004)(where court found that a City may be held liable for past practice of providing certain benefits).[21]

---

[20] Several writings may constitute a valid and binding written contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract. *Maas Bros., Inc. v. Dickinson*, 195 So. 2d 193 (Fla. 1967).

[21] The Court found that the City owed the water and sewer line costs because it had previously provided these services.  866 So.2d 153 (Fla. 1st DCA 2004).

124.     Contracts implied in law are obligations imposed by law on grounds of justice and equity and do not rest upon assent of contracting parties.[22]

125.      In this case, as articulated more fully above, the parties conduct, the past practices of the Defendant of paying free medical and dental benefits, the promises, representations and other inducements by the Defendant have the effect of creating an implied in-fact contract even where no express contract is found to exist.  The free lifetime health benefits were an integral part of the total compensation received by Plaintiff and the Class, in exchange for the performance of their services as employees of the City.

126.     Defendant materially breached the Parties implied in-fact contract when they stopped paying the insurance costs on behalf of Plaintiff and the Class.

127.     Plaintiffs have been, and will increasingly continue to be, damaged by Defendant' breach.  The Defendant's material breach was and is the actual and proximate cause of Plaintiffs' damages.

## COUNT 6
## BREACH OF ORAL CONTRACT

128.     Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92 and further alleges:

129.     Plaintiffs entered into an oral contract with the Defendant.  Plaintiffs would work for the City.  In return, the City would provide free *lifetime* health and dental insurance benefits, even during retirement, so long as employees had at least 10 years of service and were hired before October 1, 1993. The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for

---

[22]*Aldebot v. Story*, 534 So.2d 1216, 1217 (Fla. 3d DCA 1998).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

the performance of their services as employees of the City.  Plaintiffs have performed their duties under their contracts with the City.

130.      The Defendant materially breached this agreement effective January 2011 by cutting off the free lifetime medical insurance benefits.

131.      Plaintiffs have been, and will increasingly continue to be, damaged by Defendant's breach.  The Defendant's material breach was and is the actual and proximate cause of Plaintiffs' damages.  Plaintiffs have suffered damages as a direct result of Defendant's material breach.

## COUNT 7
## BREACH OF IMPLIED IN-LAW CONTRACT

132.      Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92 and further alleges:

133.      Contracts implied law are obligations imposed by law on grounds of justice and equity and do not rest upon the assent of the contracting parties.[23]

134.      There were benefits conferred upon the Defendant by Plaintiffs.  These benefits included, but are not limited to, work performed by the Plaintiffs for the Defendant for remuneration, which substantially included lifetime free health and dental insurance.The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for the performance of their services as employees of the City.  Plaintiffs have performed their duties under their contracts with the City.  In other words, the free lifetime health benefits were not a gratuitous benefit given to Plaintiffs.

---

[23]*Tipper v.Great Lakes Chemical Co.,* 281 So.3d 10, 13 (Fla. 1973).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

135.     The Defendant appreciated this benefit and indeed benefited from this arrangement.

136.     Under the totality of the circumstances, it would be inequitable for the Defendant to retain the above mentioned benefits without providing the free health and dental insurance because Defendant accepted these benefits and the work accomplished by Plaintiffs while they were under the belief that they would receive lifetime free health and dental insurance.

**COUNT 8**
**VIOLATION OF 42 U.S.C. § 1983**
**PROCEDURAL DUE PROCESS**

137.     Plaintiffs restates and reincorporate as if fully set forth here paragraphs 1 to 92 and further alleges:

138.     42 U.S.C. §1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

139.     The Fourteenth Amendment guarantees Plaintiff and the Class the right to procedural due process before a state actor may deprive an individual of life, liberty, or property and the right to equal protection of state laws.

140.     In *Rankin v. Colman,* 476 So.2d 234 (Fla. 5th DCA 1985), thecourt stated that "[t]o adequately state a cause of action under this statute, the plaintiff must allege only that a person acting under color of state law deprived him of rights protected by the United States Constitution or federal statutes." *Id.* at 236.

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

141.      Defendant acted under color of state law as a municipality because the decision to terminate the free lifetime medical benefits was an officially executed policy by the City's lawmakers and/or representatives.[24]  These individuals had the authority to bind the municipality and in fact did bind the municipality with their promises, representations, and actions.[25]

142.      The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for the performance of their services as employees of the City.  Plaintiffs have performed their duties under their contracts with the City.

143.      Plaintiffs had a vested right and constitutionally protected property and liberty interest in their vested free lifetime health and dental coverage.

144.      This vested property right was arbitrarily taken from them by a state actor acting under color of state law andwithout due process of law.  The Defendant deprived the Plaintiffs of these protected interests acting under color of state law through their positions as executives and/or commissioners of the City of Sarasota.

145.      By revoking the free lifetime medical benefits owed, Defendant has breached its contracts with Plaintiffs.

146.      As result of the foregoing actions Defendant violated 42 U.S.C.§ 1983 and caused Plaintiffs actual and ongoing injury.  They also risk losing their health care

---

[24]*See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).
[25]*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (stating "it is plain that municipal liability may be imposed for a single decision by municipal policymakers . . . [n]o one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body–whether or not that body had taken similar action in the past or intended to do so in the future–because even a single decision by such body unquestionably constitutes an act of official government policy.")

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

benefits and/or foregoing making other necessary payments in order to pay for their health care benefits.

147.     Defendant's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable.

148.     The above mentioned facts constitute a case and/or controversy as required by Art. III, Sec. 2 of the Federal Constitution because Plaintiffs have suffered, and continue to suffer, damages arising from Defendant's violation of their due process rights.

149.     Plaintiffs have standing to bring forth this action because they have a significant stake in this controversy, as they have suffered, and continue to suffer actual injuries directly and proximately due to Defendant's actions.  Additionally, this controversy is ripe for review because Plaintiffs have already suffered actual harm due to Defendant's actions.

150.     Under the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C §1983, Defendant may not take away this vested property and/or liberty interest without compensating Plaintiff and the Class for the value that it represents.

**COUNT 9**
**IMPAIRMENT OF CONTRACT**
**IN VIOLATION OF THE U.S. CONSTITUTION**

151.     Plaintiffs restate and reincorporates as if fully set forth here paragraphs 1 to 92 and further alleges:

152.     The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for the performance of their services as

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

employees of the City.  Plaintiffs have performed their duties under their contracts with the City.

153.     Public employment that provides for employment and post-employment benefits gives rise to certain legal obligations on the part of the public employer, which are subject to the Contract Clause of the United States Constitution.  The promised employment and post-employment benefits are an integral part of the compensation of Defendant's employees, and constitute vested benefits that are earned compensation.

154.     Defendant is legally bound to continue to provide free lifetime health care benefits to Plaintiffs.

155.     By revoking the owed free lifetime health benefits, Defendant substantially impaired and breached its contracts with Plaintiffs.

156.     Plaintiffs, have been, and will increasingly continue to be, damaged monetarily.  They also risk losing their health care benefits and/or forgoing making other necessary payments in order to pay for their health care benefits.  Defendant's breach is the actual and proximate cause of the damages of the Plaintiffs.

157.     Defendant's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable.  Defendant's actions unlawfully impair a contractual obligation, in violation of Article I, § 10 of the United States Constitution.

**COUNT 10**
**BREACH OF IMPLIED COVENANT OF**
**GOOD FAITH and FAIR DEALING**

158.     Plaintiffs restates and reincorporate as if fully set forth here paragraphs 1 to 92 and further allege:

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

159.     "Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract."[26]

160.     Plaintiffs and the Defendant are parties to an express contract.  In this express contract, an unambiguous material term is that Defendant will provide free lifetime health benefits for Plaintiffs.

161.     The Defendant had a duty to act in good faith and fair dealing when they made representations, agreements and promises concerning lifetime medical insurance benefits for those that fit the class description.

162.     The Defendant have breached their covenant of good faith and fair dealing by breaching a material term of the Parties' contract, namely, revoking the lifetime free medical and dental benefits on January 2011 and by otherwise not honoring the parties' agreement and/or honoring the representation and past practices of paying the lifetime insurance benefits that had been going on for decades.

163.     Defendant's behavior was not within Plaintiffs' reasonable expectations regarding the agreement between the Parties.  This behavior unfairly frustrates the contract's purpose and disappoints the reasonable expectations of Plaintiffs, as they bargained for free lifetime health benefits.  Defendant acted deliberately and consciously in their decision to revoke the vested free lifetime benefits.

164.     This breach deprives Plaintiffs of a material benefit of the Parties' contract.

165.     Plaintiffs, have been, and will increasingly continue to be, damaged monetarily due to Defendant's breach.  They also risk losing their health care benefits and/or forgoing making other necessary payments in order to pay for their health care

---

[26]*County of Brevard v. Miorelli Eng'g, Inc.*, 703 So.2d 1049, 1050 (Fla. 1997).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

benefits.  Defendant's breach is the actual and proximate cause of the Plaintiffs' damages.

## COUNT 11
## NEGLIGENT MISREPRESENTATION

166.     Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92 and further alleges:

167.     Defendant made false statementsregarding material facts in promising the Plaintiffs that they would be entitled and receive free lifetime medical and dental insurance if they were hired before October 1, 1993 and had ten or more years of service on numerous occasions.

168.     Defendant made these false statements regarding material facts of the aforementioned that they knew to be false or they made such representations without knowledge of their truth or falsity and/or should have known the misrepresentations were false.

169.     The Defendant acted recklessly and/or negligently in making the many material promises and representations concerning the Plaintiffs' entitlement to free lifetime free medical and dental insurance.

170.     Plaintiffs justifiably relied on the Defendant's material representations and promises that they would be provided free lifetime medical and dental insurance for working ten or more years and having been hired before October 1, 1993.  Plaintiffs reasonably and detrimentally relied on said representations made by the Defendant, at minimum, in that:

      **a.**  They were induced to accept employment with the City;

      **b.**  They were induced to remain employed with the City;

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

    **c.**  They were induced to continue receiving the free lifetime health benefits, rather than those available to them through other means.

171.    Defendant's actions were the actual and proximate cause of the damages of Plaintiffs.  Plaintiffs have been, and will increasingly continue to be, damaged monetarily due to Defendant's breach.  They also risk losing their health care benefits and/or forgoing making other necessary payments in order to pay for their health care benefits.

**COUNT 12**
**DENIAL OF ACCRUED AND EARNED WAGES**
**UNDER FLA. STAT. §448.08**

172.    Plaintiffs restate and reincorporate as if fully set forth here paragraphs 1 to 92 further alleges:

173.    Section 448.08, Florida Statutes (1991), provides: "the court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee."

174.    As to the applicability of § 448.08, Florida law broadly construes wages within the meaning of § 448.08 to include *all compensation* paid by an employer for the performance of service by an employee. *See Short v. Bryn Alan Studios, Inc.*, 2008 U.S. Dist. LEXIS 42308, 9-11 (M.D. Fla. May 28, 2008).

175.    The free lifetime health benefits were an integral part of the total compensation received by Plaintiffs, in exchange for the performance of their services as employees of the City.  Plaintiffs have performed their duties under their contracts with the City.  Defendant is legally bound to continue their system of providing free lifetime health benefits to Plaintiffs.  In other words, the free lifetime health benefits stem from

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

Defendant's compensation of Plaintiffs for their employment, not from any societal or moral obligation that would classify them as "non-wages."[27]

176.     Wages under Fla. Stat. § 448.08 are interrupted as essentially any form of remuneration for employment, including commissions, bonuses, accrued vacation time and insurance premium payments.

177.     Thus, in this case, the Plaintiffs are due insurance premium payments which have been wrongfully denied.  Defendant wrongfully denied these wages to Plaintiffs by taking away the free health and dental insurance the Parties had mutually agreed would compensate them for their employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek:

a.  Enter a judgment for all available damages under the law, including general damages, special damages, nominal damages, compensatory damages, and punitive damages, in amount demonstrated at trial;

b.  Enter an injunction against Defendant preventing them from their continued denial of the free lifetime health benefits arising from the above described violations and the irreparable harm Plaintiffs will face if Defendant's actions continue;

c.  Equitable relief in whatever form necessary to require and order the Defendant to take all steps necessary to revert back to providing free health and dental insurance to Plaintiffs for as long as they live and to make them whole for all damages sustained as result of not being provided free health insurance for

---

[27]*Cf.Coleman v. Hialeah*, 525 So.2d 435, 437 (Fla. 3d DCA 1988) (describing benefits such as pension benefits, worker's compensation benefits, employment disability benefits, and sick-leave benefits as arising out of "a perceived societal or moral obligation" and not directly meant to compensate an employee); *Strasser v. City of Jacksonville*, 655 So.2d 234, 236 (M.D. Fla. 1995).

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

whatever time such insurance was denied, including, but not limited to, injunctive relief;

d. Attorneys' fees, interest and costs under 42 USC § 1983 and § 1988, Fla. Stat. § 448.08, along with the Court's inherent power and any other applicable basis;

e. For declaratory judgment decreeing the Plaintiffs are entitled to lifetime free medical and dental insurance and the Defendant's action in denying such are wrong and unlawful and that all charges and damages sustained from this denial should be corrected and/or returned, refunded together with interest and whatever other awards necessary for justice to prevail;

f. For permanent and temporary relief enjoying the City from denying Plaintiffs their earned free lifetime medical and dental insurance and ordering the City to see to it these benefits are reinstated;

g. Such other relief as the Court deems necessary or proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

Dated this 18th day of March, 2014, and respectfully submitted by:

/s/ Dale J. Morgado
Dale J. Morgado, Esq.
Armando A. Ortiz, Esq.
FELDMAN MORGADO, PA
100 North Biscayne Boulevard,
29th Floor, Suite 2902
Miami, Florida 33132
305-222-7850 Telephone
305-384-4676 Facsimile
E: dmorgado@fmlawgroup.us
E: aortiz@fmlawgroup.us

*Attorneys for the Plaintiffs*

Feldman Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850